## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON BATES,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-2956** |
| | : | |
| **MONTGOMERY COUNTY,** *et al.,* | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**TUCKER, J.**                                                                    **September 17, 2021**

Presently before the Court is a Motion to Dismiss from Defendants Montgomery County ("the County"), Warden Julio Algarin ("Algarin") and Paul Carbo ("Carbo") (ECF No. 5), and Plaintiff's Response in Opposition (ECF No. 6).  Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Defendants' Motion is **GRANTED IN PART and DENIED IN PART**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff, an African American man, has held multiple positions in the County's Correctional Facility ("the Prison") since December 26, 1989.  Compl. at ¶¶ 15, 39, 66. Plaintiff eventually reached, and currently maintains, the position of Captain.  *Id.* at ¶ 15. Throughout his employment, Carbo, a white male, was his supervisor.  *Id.* at ¶ 41.   Plaintiff alleges he suffered discrimination throughout his tenure at the prison but has separated the incidents into two distinct time periods, pre- and post- January 19, 2019, when Defendants' racist behavior towards Plaintiff significantly escalated.  *Id.* at ¶ 43.

---

[1] This section draws primarily from Plaintiff's Complaint (ECF No. 1).

### A. Pre- January 19, 2019 Incidents

The first alleged discriminatory action occurred in 1999 when Officer Stofflet referred to Plaintiff as "f***ing useless."  The following year, Maintenance Supervisor Ventresca threatened that he would bring Plaintiff "back 100 years [to a time significantly closer to slavery]."  Approximately a year later, Officer Hoy began to refer to Plaintiff as "H.N.I.C." or Head N-word in Charge.  Compl. at ¶ 43, Part I.

Others replicated this behavior and began to direct racial slurs at Plaintiff.  Bates claims that in 2005, Officer Interrante called him a "trained monkey" on at least two occasions and encouraged his subordinates to "blame [their issues] on the black man."  Additionally, Officer Dubost called him, and other black employees, the "n-word" while Officer Catania stated, "blacks are no good."  Compl. at ¶ 43, Part I.

On January 23, 2018, Defendant Carbo questioned Plaintiff in a derogatory manner in front of other staff members and demanded "why is this black dummy on the floor?!"  Compl. at ¶ 43, Part I.  Offended, Plaintiff filed a grievance against Carbo that same day.  His grievances, however, fell on deaf ears, forcing him to send multiple follow-up emails.

After a third follow-up email, Defendant Warden Algarin approached Plaintiff and told him that "if this complaint doesn't go away, [he's] fired."  These threats spanned from February 2018 until January 19, 2019. Comp. at ¶ 54.  Eventually, Carbo was directed to undergo sensitivity training, but Plaintiff alleges Defendants Algarin and the County failed to take steps to ensure he complied with that directive.  *Id*. at ¶ 61.

### B. Post- January 19, 2019 Incidents

After January 19, 2019, Plaintiff alleges the discrimination and harassment intensified. Officer Hittle kicked off this series of events when he began to question Plaintiff's qualifications,

suggesting he was just a "fill-in" and that he wasn't a "real Captain."  On August 15, 2019, Jen

Decarlo stated that Plaintiff was doing "typical n***** shit."  Comp. at ¶ 43, Part II.  Moreover,

Algarin became more aggressive in demanding Plaintiff drop his grievances.  This all came to a

head when he cornered Plaintiff, placed his finger in Plaintiff's face, raised his voice, and told

him to withdraw his complaints "or else." Comp. at ¶ 56.

On June 8, 2020, Plaintiff commenced this action.  ECF No. 1.  His Complaint pleads

that "on multiple dates to be identified in discovery, but after January 19, 2019," he requested

overtime and "hazard pay" during the COVID-19 pandemic but was ultimately denied. Comp. at

¶¶ 58, 68.  Plaintiff alleges that he is the only African American Captain who has yet to receive

these benefits.  He also asserts that Defendants passed him over for a promotion to Major and

filled the positions with non-African Americans.  *Id*. at ¶ 70.

Plaintiff brings this action for employment discrimination and retaliation under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, §1981, and the Pennsylvania

Human Relations Act ("PHRA").  ECF No. 1.

On November 5, 2019, Plaintiff filed a discrimination charge with the Equal Employment

Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission

("PHRC"); the EEOC issued a right to sue letter on or about March 12, 2020.  Compl. at ¶¶ 8,

34-35.  Defendants seek dismissal pursuant to Fed. R. of Civ. Pro. 12(b)(6), failure to state a

claim.  ECF No. 5.

## II.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings.

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is

plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id*. at 234 (quoting *Twombly*, 550 U.S. at 556).

Santiago v. Warminster Township* sets forth a three-part test that district courts must apply when evaluating whether allegations survive a 12(b)(6) motion to dismiss. 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion for dismiss will be granted.

## III. DISCUSSION

### A. Hostile Work Environment Allegations

Title VII prohibits discrimination against employees "on the basis of race, color, religion, sex, and national origin." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011). The PHRA offers similar protections and adds age, handicap, or disability as protected classes. 43 Pa. Stat. § 952. PHRA violations are analyzed under the same framework as Title VII violations. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("Claims under the PHRA

are interpreted coextensively with Title VII claims.") (internal quotations and citations omitted.)
Therefore, Counts I and II will be addressed together.

To prove hostile work environment under Title VII and PHRA, a plaintiff must show
that: (1) they suffered intentional discrimination because of their protected class; (2) the
discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the
discrimination would detrimentally affect a reasonable person in like circumstance; and (5)
*respondeat superior* liability exits.  *Mandel*, 706 F.3d at 167.  Only these *prima facie* elements
need to be established at the motion to dismiss stage "because it may be difficult for a plaintiff to
prove discrimination before discovery has unearthed relevant facts and evidence."  *Castleberry v.
STI Group*, 863 F.3d 259, 266 (3d Cir. 2017) (internal citation omitted.)   Plaintiff's Complaint
has sufficiently satisfied all five elements of a hostile work environment claim to survive a
motion to dismiss.

Plaintiff satisfies the first element.  Discrimination in the workplace can be overt or
facially neutral.  *Brown-Baumbach v. B&B Auto., Inc.*, 437 F. App' x 129, 134 (3d Cir. 2011).
Here, the racial discrimination was overt.  Plaintiff is an African American man, and his
Complaint asserts that Defendants used racial epithets multiple times throughout his tenure at the
prison. [2]  Not only was he subjected to racial slurs, Defendants and other employees would make
other racist comments such as: "just blame [your issues] on the black man;" "Blacks are no
good;" and "not being a real captain," but instead a "fill-in."  ECF No. at ¶ 43.

Element two is also satisfied.  To prove severe or pervasive discrimination, a "plaintiff
must show that the workplace is permeated with discriminatory intimidation, ridicule, and
insult…sufficiently sever or pervasive to alter conditions of the victim's employment and [to]

---

[2] Plaintiff alleges that he was called: "H.N.I.C.," a trained monkey, and a black dummy.  Compl. at ¶ 43.

create an abusive working environment." *Torres v. Deblasis*, 959 F. Supp. 2d 772, 782 (E.D. Pa. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Here, the discrimination was severe because multiple employees made racially charged comments and insults. Additionally, Plaintiff's supervisor, Defendant Algarin, intimidated Plaintiff when he threatened to fire him unless he withdrew his complaints against another co-worker. Finally, the discrimination was pervasive as it spanned multiple years and included at least six individuals who used racial slurs.

Elements three and four are also satisfied. Even if the alleged discrimination detrimentally affected a plaintiff as an individual, courts have held they must show that a reasonable employee in plaintiff's position would also be detrimentally affected. *Shramban v. Aetna*, 115 F. App 'x 578, 580 (3d Cir. 2004); *see also Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 244 (E.D. Pa. 2014) (finding that racist remarks, intimidation, and physical confrontation would "create a hostile working environment to a reasonable individual."). Here, Plaintiff alleges that his experiences resulted in "physical and emotional distress." Compl. at ¶ 63. Thus, the third element is satisfied. Moreover, a reasonable employee in Plaintiff's position would have been detrimentally affected by the name calling, racial slurs, and the threats to their job. Thus, element four is satisfied as well.

Lastly, Plaintiff satisfies the fifth element. Under the theory of *respondeat superior*, an employer bears responsibility for the actions of its employees. *Castleberry*, 863 F. 3d at 263. Employers are strictly liable for the discriminatory actions of a plaintiff's supervisor. *In re Tribune Media Co.*, 902 F.3d 384, 399 (3d Cir. 2018). For Title VII purposes, "[a]n employee is a supervisor…if he [or she]…is empowered by the employer to take tangible employment actions…such as hiring [or] firing." *Moody v. Atl. City Bd. of Ed.*, 870 F.3d 206, 216 (3d Cir.

2017).  Liability exists if the person accused of creating the hostile work environment is the Plaintiff's supervisor.  *Frazier v. Henry H. Ottens Mfg. Co., Inc.*, No. 11-3987, 2012 WL 1137051, at *8 (E.D. Pa. Apr. 5, 2012).

Plaintiff's Complaint focuses on alleged discrimination he suffered at the hands of his Warden Algarin and Supervisor Carbo.  There is no dispute that both individuals served as Plaintiff's supervisors.  There is also no dispute that they were empowered by the County to take tangible employment action.  Accordingly, Plaintiff has sufficiently plead all the elements of a hostile work environment claim.

### B.  Plaintiff has Sufficiently Plead Retaliation Claims under Title VII and PHRA

A plaintiff claiming retaliation must prove: "(1) that [they] engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015); *see Carvalho-Grevious v. Delware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).  Moreover, filing an internal discrimination claim with management is a protected activity, as is filing a formal complaint with the EEOC.  *See Daniels*, 776 F.3d at 193 (even informal complaints of discrimination to management qualify as protected conduct).

Here, Plaintiff engaged in protected activity by filing a complaint with the EEOC, PHRC, and an internal grievance.  Next, Plaintiff suffered an adverse action by his employer when Warden Algarin threatened Plaintiff that if the "complaint doesn't go away, [he's] fired." Compl. at ¶ 53.  Algarin continued this adverse action when he cornered Plaintiff, placed his finger in his face, raised his voice, and told him to withdraw his complaints "or else." *Id*. at ¶ 56.  Therefore,

Plaintiff has shown that Defendant's adverse action occurred after Plaintiff engaged in a protected activity.

In examining whether acausal connection exists, a court may consider any "evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F. 3d at 196.  Additionally, a plaintiff must offer evidence "that the individual responsible for the adverse action knew of the Plaintiff's protected conduct at the time they acted."  Plaintiff has provided sufficient evidence.  It is undisputed Algarin knew about the internal complaints when Plaintiff filed and followed up on his grievances.  This is also evidenced by the multiple threats Algarin made in an effort to coerce Plaintiff.  Compl. at ¶ ¶ 53, 56.  Taking Plaintiff's allegations as true and viewing them in a light most favorable to him, Plaintiff has established a *prima facia* case of retaliation.

**C.  §1983 Claim**

**1.  Plaintiff has Sufficiently Plead a Plausible Claim for Recovery Under § 1983 as to the County Defendant**

Defendants argue that Plaintiff's third claim should be dismissed as to the County Defendant.  Plaintiff's Complaint asserts a §1983 claim against all defendants, alleging they "deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment."  A county, municipality, or agency may not be sued under § 1983 unless their policy or custom caused Plaintiff's injury.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Under 42 U.S.C. § 1983, a plaintiff must allege (1) a constitutionally-protected right has been violated and (2) the alleged violation resulted from a municipal policy, custom, or practice of deliberate indifference to the rights of citizens.  *Id*. at 694-95.  A policy is "made when a decisionmaker possess[ing]final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of*

*Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  A custom can be shown when a "'given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Roman*, 914 F.3d at 778 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Plaintiff's Complaint asserts Defendants' policies treat African American employees less favorably than non-African American employees.  Compl. at ¶ 87.  Specifically, he asserts that, although he was as qualified as many other similarly situated white captains with comparable levels of longevity, he was denied overtime and emergency pandemic pay.  *Id*. at ¶¶ 66-69. Plaintiff lists five other captains; all but one has shorter tenures at the facility but received the benefits while Plaintiff has not.  *Id*. at ¶ 69.  Moreover, he pleads that Defendants choose to promote others to Major over him.  *Id*. at ¶ 70.

Plaintiff is an African American man and under the Fourteenth Amendment's Equal Protection Clause, was entitled to be treated equally to similarly situated captains. His allegations that Defendants did not provide him with overtime, emergency pay, or a promotion, based on his race, satisfies the first *Monell* prong.  *Monell*, 436 U.S. at 694-95.

Additionally, Defendants' habit of promoting white captains over black ones over years constitutes a practice and policy.  *Roman*, 914 F.3d at 789.  Defendant Algarin and Carbo are both in positions of leadership, power, and decision-making authority.  Algarin is the Prison's Warden while Carbo is Plaintiff's supervisor.  Both would have the authority to influence and determine who is promoted while also dictating who receives overtime shifts.  The Complaint sufficiently establishes that Defendants, under the leadership of both Defendants, created a

policy of promoting non-black employees, in violation of §1983. Thus, Defendants' motion is denied.

### 2. Plaintiff's §1983 Claim Does not Duplicate the Title VII Claim.

Defendants assert that Plaintiff's § 1983 claim is impermissibly duplicative of his Title VII claim. Defs.' Br. at 11. Defendants argue that under Third Circuit precedent, §1983 bars Plaintiff's claim for Title VII damages. *Id*. (citing *Williams v. Pa. Human Relation Com.*, 870 F.3d 294 (3d Cir. 2017). This Court, however, finds this argument without merit.

The *Williams* court concluded "that §1983 does not confer any substantive rights, but rather allows a method for vindicating rights that are conferred by the federal Constitution or statutes." *Shklyar v. City of Pittsburgh*, 18-cv-1588, 2019 WL 611876, at *8 (W.D. Pa. 2019) (citing *Williams*, 870 F.3d at 297). As such, "plaintiffs may not seek damages under § 1983 for stand-alone violations of [] Title VII" if an independent enforcement method exists. The Court further determined that allowing a plaintiff § 1983 as a mechanism for Title VII violations would "thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified." *Williams*, 870 F.3d at 299.

Defendants' arguments fail because *Williams* applies when a plaintiff attempts to use § 1983 to assert statutory rights, not when a plaintiff seeks redress for constitutional violations such as those afforded by the Equal Protection Clause. *See Shklyar*, 2019 WL 611876, at *8. Plaintiff's rights under Title VII and the Equal Protection Clause overlap because Plaintiff asserts that racial discrimination, but nonetheless his §1983 claim "is expressly based upon the Equal Protection Clause, not Title VII." *Id*.

### D.  Plaintiff's § 1981 Contractual Claim

Defendants argue Count IV of Plaintiff's Complaint should be dismissed because: (1) Plaintiff is an at-will employee; and (2) Plaintiff improperly relies on a district court opinion which is inapplicable here.

To state a valid claim under § 1981, a plaintiff must show that: (1) he or she is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes a right to make and enforce contracts.  *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 9797 (3d Cir. 2001).

Plaintiff fails to assert any facts showing he was not an at-will employee.  Compl. at ¶ 10. Moreover, although Plaintiff alleges specific accounts of discrimination by state actors, he does not plead that he had signed any contract or entered into an agreement with Carbo and Algarin. Therefore, this Court **GRANTS** Defendants' Motion to Dismiss Count IV.

### IV.    CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part Defendants' Motion to Dismiss as to Count IV; Plaintiff is granted leave to amend the Complaint to remedy Count IV only.  The Defendants' Motion is denied in all other respects.

An appropriate order follows.